OPINION OF THE COURT
Gloria M. Dabiri, J.
In this action for medical malpractice, plaintiff seeks leave to reargue (CPLR 2221 [d]) a motion by St. Vincent’s Catholic Medical Center (St. Vincent) and Alfred Wong, M.D., which resulted in an August 14, 2009 order dismissing her complaint as against them. Upon reargument plaintiff requests an order denying that portion of the motion as dismissed her complaint against Dr. Wong. Defendant Harrison Mu, M.D. cross-moves for an order preserving his CPLR article 16 rights against St. Vincent and Dr. Wong.
Background
On July 5, 2005, St. Vincent’s Catholic Medical Centers of New York, and a number of its affiliates, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York. Estimating between $77 million and $116 million in liability for timely filed medical malpractice claims against St. Vincent, the First Amended Chapter 11 Plans of Reorganization and Liquidation for St. Vincent, dated June 5, 2007 (the plan), created three *438 medical malpractice (MedMal) trusts from which the holders of timely filed medical malpractice claims were entitled to seek payment.
The Bankruptcy Court, by order of January 25, 2006, set March 30, 2006 at 4:00 p.m. as the “bar date” for filing proof of claims arising prior to July 5, 2005. Notice of the bar date was mailed to holders of asserted or potential medical malpractice claims and was published in accordance with the bar date order. Claimants who did not timely file were foreclosed from seeking payment. Specifically, the January 25, 2006 order provided that untimely claimants be “forever barred, estopped and enjoined from asserting such claims against the Debtors [or filing a Proof of Claim with respect thereto], and [that] the Debtors and their property shall be forever discharged from any and all indebtness or liability with respect to such claim.” The Bankruptcy Code (11 USC) § 1125 disclosure statement reflected that holders of MedMal claims who did not timely file would be precluded from recovery under the plan and from any of St. Vincent’s insurers.
On May 9, 2006, plaintiff commenced this action against St. Vincent, Neil M. Richards, M.D., Alfred Wong, M.D. and Harrison Mu, M.D., alleging malpractice in connection with medical care received between approximately January 26, 2004 and February 7, 2004. Notice of the bankruptcy proceeding was served on all parties on May 30, 2006. On or about July 25, 2006, Dr. Richards and Dr. Wong interposed an answer.
As of August 30, 2007, the effective date of the July 27, 2007 Bankruptcy Court order confirming the plan (confirmation order), the automatic stay and injunction were lifted and each holder of a claim is “deemed to have forever waived, released, and discharged the Debtors ... of and from any and all Claims . . . that arose prior to the Confirmation Date [and is] forever precluded and enjoined . . . from prosecuting or asserting any such discharged Claim.” All entities holding claims against debtors are enjoined by the confirmation order from “commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind . . . against or affecting the debtors, the Post-Effective Date Debtors, the Released Parties, or their property.”
Further, the plan provides reimbursement to physicians and employees of the hospital, who are defendants in civil actions, with a right to indemnification by the hospital. In this regard, the confirmation order provides:
*439 “If, notwithstanding the injunction contained in First Amended Plan Section 11.6 and set forth in paragraphs 35 and 36 of this Confirmation Order, any holder of a MedMal Claim shall assert such claim against a Covered Person, the injunction shall not preclude[ ] such Covered Person from asserting his or her right to indemnification against [St. Vincent] (nor shall SVCMC be prevented from asserting all defenses, if any, to such asserted right to indemnification). Any indemnification amount owed to a Covered Person by [St. Vincent] on account of a MedMal Claim shall be paid from the appropriate MedMal Trust; however, nothing in First Amended Plan Section 11.6 (d) or this Confirmation Order shall be deemed to supersede an obligation, if any, of [St. Vincent] to provide legal representation for a Covered Person in the defense of a MedMal Claim” (confirmation order 1i 42).
A “Covered Person” is defined by section 1.42 of the plan as any physician or employee of St. Vincent to the extent that such physician or employee has a right of indemnification against or from St. Vincent with respect to claims of alleged medical malpractice.
In March 2009, St. Vincent and Dr. Wong moved, pursuant to CPLR 3211, to dismiss the complaint against them due to plaintiffs failure to file proof of claim by the bankruptcy bar date (the underlying motion). The defendants argued that plaintiff had actual notice of the bankruptcy proceeding and failed to seek leave of the Bankruptcy Court to file a late claim. In addition, defendants maintained, Dr. Wong, an employee of the hospital, was covered under its self-insurance fund and therefore is a “covered person” subject to the protection of its bankruptcy discharge. Defendants pointed out that plaintiff only alleges causes of actions for which the hospital would be vicariously liable for the conduct of employees, such as Dr. Wong, or of attending physicians (see Mduba v Benedictine Hosp., 52 AD2d 450 [1976]) with a right to indemnification. In opposition, plaintiff maintained that Dr. Wong was an active tortfeasor with no right to indemnification by St. Vincent and, moreover, that the defendants waived their right to dismissal (CPLR 3211 [a] [5]) by failing to timely seek this relief (CPLR 3211 [e]). Plaintiff did not dispute that she had not timely filed a proof of claim. By order of August 14, 2009 the defendants’ motion was granted, the complaint against St. Vincent and Dr. Wong dismissed, and the caption of the action amended accordingly.
*440 By notice of motion, dated October 13, 2009, plaintiff seeks reargument. Plaintiff argues that Dr. Wong was an attending sued due to his individual acts of negligence, and that Dr. Wong was not a party to the bankruptcy proceeding, is not a “debtor” as defined by the Bankruptcy Court and, therefore, is not entitled to the protection of St. Vincent’s bankruptcy discharge. Plaintiff maintains that the right to sue St. Vincent was extinguished by the August 14, 2009 order, and that as an active tortfeasor Dr. Wong, in any event, would be precluded from indemnification by the hospital.
Dr. Wong, in opposition, contends that as a “covered person” entitled to indemnification, he is protected by St. Vincent’s bankruptcy discharge. Dr. Wong asserts that at the time of the alleged malpractice he was an employee of St. Vincent, insured by the hospital “under the self-insurance fund[, and that he] had no additional medical malpractice insurance coverage other than that provided by [St. Vincent].”
In reply and supplemental reply affirmations, plaintiff maintains that pursuant to 11 USC § 524 (e) the “discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.” Plaintiff relies upon Pomerantz v In-Stride, Inc. (39 AD3d 522 [2007]) in support of her contention that where coverage exists, a direct action, even against a debtor, for the purpose of recovering against its liability insurer under Insurance Law § 3420 is permissible.
On March 2, 2010, via supplemental opposition, Dr. Wong sought to stay determination of the motion to reargue due to the appeal pending in the United States Court of Appeals, Second Circuit in In re Saint Vincents Catholic Med. Ctrs. of N.Y. (417 BR 688 [2009] [hereinafter In re Saint Vincent’s Catholic Med. Ctrs. of N.Y. or Goodman]).[1] On March 4, 2010, plaintiff supplied a further supplemental affidavit, arguing that the Goodman case supports her position that Dr. Wong be held responsible for his individual acts of malpractice.
On April 14, 2010, St. Vincent and certain of its affiliates filed new chapter 11 petitions in the U.S. Bankruptcy Court for the *441 Southern District of New York. By letter dated April 20, 2010, counsel for Dr. Richards and Dr. Wong advised the parties that these defendants are affiliates of St. Vincent and that “[a]s of the Petition Date, the Litigation is stayed” pursuant to 11 USC § 362 (a) (2) and (6). Notably, neither Dr. Richards nor Dr. Wong is listed as an affiliated debtor.[2] The court permitted the parties the opportunity to brief issues related to St. Vincent’s recent filing.[3] By letter of June 2, 2010, plaintiff argues that the April 14, 2010 stay is limited to the debtor and does not encompass the nondebtor physicians who are liable for their individual acts of negligence. Plaintiff further argues that while courts have extended the automatic stay to nondebtors in “unusual circumstances” where “it contributes to [the] debtor’s efforts to achieve rehabilitation,” here the hospital “has no liability as [the] defendants are liable for their own actions as active tortfeasors.” By letter of June 10, 2010, Dr. Mu requests that the court, sua sponte, stay the within proceedings in the interest of justice.
Discussion
The April 14, 2010 Bankruptcy Stay
As is relevant here, 11 USC § 362 provides that the filing of a voluntary or involuntary petition for bankruptcy operates as a stay, applicable to all entities, of:
“(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
*442 “(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; . . .
“(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.” (Emphasis added.)
By its terms, section 362 applies only to “debtors,” the property of “debtors” and the property of the estates of “debtors.” It does not operate to stay proceedings against nondebtors (Chord Assoc., LLC v Protech 2003-D, LLC, 2010 WL 1257874, 2010 US Dist LEXIS 28465 [ED NY 2010]). “In rare circumstances a debtor may obtain an order of a bankruptcy court[,] after notice to affected parties and a hearing[,] to stay suits against third parties to avoid material prejudice to the debtor or the debtor’s property” (In re Saint Vincents Catholic Med. Ctrs. of N.Y., 398 BR 517, 520 [2008]). For instance, the automatic stay may be applied to a nondebtor when the claim against the nondebtor will have an immediate adverse economic consequence to the debtor’s estate, such as when the debtor is a guarantor, a claim is made against the debtor’s insurer, or in an action where there is such an identity between the debtor and the defendant or third-party defendant that the debtor may be said to be the real party defendant (Queenie, Ltd. v Nygard Intl., 321 F3d 282, 287-288 [2003]; Weisman v Southeast Hotel Props. L.P., 1992 WL 131080, 1992 US Dist LEXIS 7736 [SD NY 1992]).
In this case the record is devoid of any fact warranting an extension of the stay, emanating from the April 14, 2010 bankruptcy filing, to nondebtors Dr. Wong, Dr. Richards or Dr. Mu (Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC, 13 AD3d 89 [2004]). Indeed, no party raises an argument in this regard. Nor has St. Vincent indicated that it has sought, or will seek, an order by the Bankruptcy Court staying the medical malpractice claims against these defendants based upon a duty to indemnify them (see generally In re Saint Vincents Catholic Med. Ctrs. of N.Y., 398 BR 517, 520 [2008]). As the nondebtor defendants fail to sustain their burden of demonstrating grounds to stay this action (11 USC § 362 [a]; CPLR 2201) their application for a stay of these proceedings is denied (see Chord Assoc., LLC v Protech 2003-D, LLC, supra; see also Rosenbaum v Dane & Murphy, 189 AD2d 760, 761 [1993]).
*443 Plaintiffs Motion to Reargue
In In re Saint Vincents Catholic Med. Ctrs. of N.Y. (398 BR 517 [2008] [hereinafter In re Saint Vincent’s Catholic Med. Ctrs. of N.Y. or Goodman]), the United States Bankruptcy Court for the Southern District of New York, on December 4, 2008, denied a motion by St. Vincent, following confirmation of the plan, to bar medical malpractice claims against covered persons, to enforce the automatic stay in their favor (11 USC § 362) and for an automatic injunction (11 USC § 524 [e]) on behalf of certain of its employees who were defendants in a state action. The ruling was affirmed, in all respects, by the United States District Court for the Southern District of New York (In re Saint Vincents Catholic Med. Ctrs. of N.Y., 417 BR 688 [2009]).
The issue before the Bankruptcy Court, much like in this case, arose out of a state court medical malpractice action against St. Vincent, one of its doctors and a nurse. The plaintiffs, the Goodmans, had not timely filed proof of claim against St. Vincent as required by the Bankruptcy Court’s January 25, 2006 bar date order and, therefore, pursued their suit in state court solely against the hospital’s staff.
The Bankruptcy Court in Goodman framed the issue before it as follows:
“The issue raised . . . concerns MedMal Claimants who did not timely file claims in the Debtors’ bankruptcy . . . Such Claimants, unless permitted to file a late claim by order of this Court, are barred from asserting their claims against the Debtors or the Debtors’ estates and are barred from any recovery from the MedMal Trusts. The only recourse for such Claimants is to assert their claims for medical malpractice against the responsible medical professionals — physicians, nurses — whether employed by the Debtors or not and, if successful, to recover their damages from whatever insurance may be available to the defendant professionals or from their personal assets. In such cases, the defendant professionals who have a right of indemnification against the Debtors fall within the definition of ‘Covered Person’ under the Debtors’ Plan. Since the Plan provides no bar date on Covered Persons’ rights to indemnification from the Debtors, the Plan states that Covered Persons’ rights to indemnification will be satisfied out of the MedMal Trusts” (In re Saint Vincents Catholic Med. Ctrs., 398 BR at 520).
*444 In the Goodman case St. Vincent sought an order from the Bankruptcy Court establishing procedures for determining “Covered Person” status for its employees and others entitled to indemnification by it, and for an order enforcing its bankruptcy stay and plan injunction in favor of its employees. St. Vincent maintained that since the employee defendants had a right to indemnification by it and were “Covered Persons” under the plan, failure to timely file proof of claim precludes suit against them as well. Following a hearing the Bankruptcy Court first noted that while in “rare circumstances” a debtor may stay suit “against third parties to avoid material prejudice to the debtor or the debtor’s property,” no such order was ever sought by St. Vincent with respect to its employees (In re Saint Vincents Catholic Med. Ctrs., 398 BR at 520). The court concluded that while the employee defendants may fall within the definition of “Covered Persons,” nothing within the Bankruptcy Code authorizes a discharge of claims against nondebtors or an injunction barring claims against them for their “own derelictions” (id., citing Bankruptcy Code [11 USC] § 524 [e]). Moreover, there was nothing within the plan, the confirmation order or any Bankruptcy Court order which provides that a MedMal claim against a “Covered Person” can only be allowed if a proof of claim is timely filed in the bankruptcy case (In re Saint Vincents Catholic Med. Ctrs. of N.Y., 398 BR 517, 524 [2008]). The court noted that, to the contrary, section 11.6 (d) of the plan expressly contemplates that notwithstanding the injunction, a holder of a MedMal claim may sue a “Covered Person,” in which case the “Covered Person” may seek indemnification.
Finally, the Bankruptcy Court pointed out that there is no bar date order and no time limitation with respect to claims against “Covered Persons” imposed by law, court order or the plan. Therefore, claims against “Covered Persons,” essentially third parties, were not equivalent to claims against a “debtor,” discharged by the confirmation order, or untimely in any bankruptcy context (id. at 523-524).
On appeal, the District Court held that the Bankruptcy Court was within its jurisdiction in interpreting and enforcing the meaning of “Covered Persons” under the plan (In re Saint Vincents Catholic Med. Ctrs., 417 BR at 694). While the plan clearly allowed “Covered Persons” to seek indemnification from the debtor, the District Court agreed that this did not constitute an impermissible indirect claim or action against the debtor or its *445 property {id. at 694-695). The District Court again emphasized that under the plan and confirmation order a “Covered Person” is distinct from a “debtor” and, therefore, confirmation of the plan did not enjoin claims against “Covered Persons” {id.).
Furthermore, the District Court reasoned that it lacked any information regarding the contractual indemnification obligations between St. Vincent and its employees and therefore “[i]t would be inappropriate to enjoin any or all medical malpractice claims against St. Vincents’s employees if there is no way to determine at the outset of such actions whether the doctor or nurse in question has a right to indemnification, and is thus a Covered Person” (id. at 695). Finally, the District Court concluded that the Bankruptcy Court providently denied the debtor’s request to release the nondebtor, potential covered persons from liability in the absence of truly unusual and unique circumstances demonstrating an impact on the success of the plan (id. at 696, citing In re Metromedia Fiber Network, Inc., 416 F3d 136, 143 [2005] and In re Continental Airlines, 203 F3d 203, 216 [2000]). Mindful of the debtor’s concern that indemnification payments to “Covered Persons” for judgments where no timely proof of claim was filed may potentially strain the resources of the MedMal trusts, the District Court concluded that, nevertheless, there was no basis for enjoining claims against potential “Covered Persons.”
In the case at hand, Dr. Wong seeks to distinguish the Goodman case on the grounds that the Goodmans filed suit following confirmation of the plan, whereas the plaintiff in this case commenced her action prior to confirmation. This argument is without merit. Regardless of whether Dr. Wong is a “Covered Person” entitled to be indemnified by St. Vincent, he is a nondebtor third party and, as such, not subject to St. Vincent’s bankruptcy discharge or injunctive relief (In re Saint Vincents Catholic Med. Ctrs. of N.Y., 417 BR at 696).
Leave to reargue “shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion” (CPLR 2221 [d] [2]). Renewal is appropriate where “there has been a change in the law that would change the prior determination” (CPLR 2221 [e] [2]). “A clarification of the decisional law is a sufficient change in the law to support renewal” (Dinallo v DAL Elec., 60 AD3d 620, 621 [2009]). Accordingly, leave to renew and reargue is granted and the order of August 14, 2009 is modified to the extent of denying that portion of the defendants’ motion as sought dis *446 missal of plaintiffs claims against Dr. Wong (In re Saint Vincents Catholic Med. Ctrs. of N.Y., supra; see also Petsako v Zweig, 8 AD3d 355 [2004]).
Cross Motion of Dr. Mu
By cross motion, Dr. Mu seeks to preserve his CPLR article 16 rights to apportionment with respect to St. Vincent and Dr. Wong.
When a motion for summary judgment is made it is considered to be the procedural equivalent of a trial (S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 341 [1974], citing Falk v Goodman, 7 NY2d 87 [1959]). Thus, courts have held that a defendant who sits idle while a codefendant successfully pursues summary judgment cannot rely upon the conduct of the party to whom summary judgment dismissal has been granted to limit her liability at trial (see Tapogna v Tan, 2010 NY Slip Op 31818[U] [2010], citing Drooker v South Nassau Communities Hosp., 175 Misc 2d 181 [1998]). In this case, however, the codefendants do not seek summary judgment but, rather, seek dismissal of the complaint, pursuant to CPLR 3211. Thus, no probative evidence has been offered, and no finding made, regarding the fault of St. Vincent or of Dr. Wong. As the issue before the court is not liability, Dr. Mu may not be penalized for failing to present evidence in this regard.
The affirmative defense of CPLR article 16 is statutory in nature (Arnold v Siegel, 296 AD2d 363, 364 [2002]). Pursuant to CPLR 1601 (1), the defense automatically applies whenever a defendant’s share of the liability is 50% or less:
“Notwithstanding any other provision of law, when a verdict or decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable . . . and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant’s equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss” (Marsala v Weinraub, 208 AD2d 689, 690 [1994]).
It is clear that whenever a plaintiff sues multiple defendants, CPLR article 16 will apply unless the plaintiff can show that one of the exceptions in CPLR 1602 applies {Marsala, 208 AD2d at 690). Here, plaintiff has not pleaded or proved any CPLR *447 1602 exception (Cole v Mandell Food Stores, 242 AD2d 552, 554 [1997], affd 93 NY2d 34, 38-39 [1999]). Nor has the Legislature provided for an exemption based upon bankruptcy (Morales v County of Nassau, 94 NY2d 218, 221 [1999]).
While “the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share ... if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action” (CPLR 1601 [1]), New York’s courts do not lack jurisdiction over a tortfeasor in bankruptcy (Matter of New York City Asbestos Litig., 6 AD3d 352 [2004]; Matter of New York City Asbestos Litig., 194 Misc 2d 214 [2002]).
“[A]rticle 16 was intended to remedy the inequities created by [common-law] joint and several liability on low-fault, ‘deep pocket’ defendants” (Rangolan v County of Nassau, 96 NY2d 42, 46 [2001]) who, “[p]rior to article 16’s enactment, . . . could be held liable for the entire judgment, regardless of [their] share of culpability” (id., citing Sommer v Federal Signal Corp., 79 NY2d 540, 556 [1992]). Precluding apportionment against St. Vincent would defeat the salutary purpose of the statute by requiring Dr. Mu to potentially assume the hospital’s proportion of noneconomic damages. While St. Vincent’s will not participate at trial, equity requires that individual defendants have the benefit of CPLR article 16 where appropriate (Kharmah v Metropolitan Chiropractic Ctr., 288 AD2d 94, 94-95 [2001]). No determination is made as to any defendant’s rights as against St. Vincent. Accordingly, it is ordered, that the motion is granted to the extent that renewal and reargument are granted and upon renewal and reargument the order of August 14, 2009 is amended to deny that portion of the motion as sought dismissal of the action as against Dr. Wong; and it is further ordered, that the caption is amended to read as follows: *448 and it is further, ordered, that the cross motion of Harrison Mu, M.D. is granted to the extent indicated herein.
*447 -X
Nikki Brash,
Plaintiff,
-against-
Neil M. Richards, M.D., Alfred Wong, M.D. and Harrison Mu, M.D.
Defendants.
X”

. On October 13, 2009, notice of appeal to the United States Court of Appeals for the Second Circuit was filed on behalf of St. Vincent (docket Nos. 09-4261-BK, 09-4347-BK). On November 19, 2009 via stipulation the appeal was withdrawn from active consideration, with leave to reactivate by June 30, 2010. The parties stipulated that if not reactivated by such date the appeal shall be subject to dismissal with prejudice. As of July 16, 2010, the appeal was marked withdrawn by stipulation and the cases closed.

. The “Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines” and a copy of the voluntary petition in the 2010 bankruptcy action were supplied to the court. The voluntary petition lists the following affiliated debtors: 555 6th Avenue Apartment Operating Corporation; Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; Chait Housing Development Corporation; Fort Place Housing Corporation; Professional Registry, Inc.; Pax Christi Hospice, Inc.; Saint Vincent’s Catholic Medical Centers of New York, doing business as Saint Vincent’s Catholic Medical Centers, doing business as SVCMC Home Health Agency; Sister of Charity Health Care System Nursing Home, Inc., doing business as St. Elizabeth Ann’s Health Care & Rehabilitation Center; St. Jerome’s Health Services Corporation, doing business as Holy Family Home.

. Further oral argument was held on June 4, 2010, at which time the motions were marked fully submitted.